IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : |
| | : CRIMINAL ACTION NO. |
| QUINTON JACKSON, | : 1:15-CR-00159-SCJ-JFK |
| | : |
| Defendant. | : |
| | : |

ORDER

This matter appears before the Court for consideration of a March 22, 2016 Report and Recommendation ("R&R") (Doc. No. [59]), in which The Honorable Janet F. King, United States Magistrate Judge, recommended that the Defendant's Motions to Suppress (Doc. Nos. [15], [16]) be denied.

In reviewing the R&R, this Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court must "read the transcript of the hearing before a magistrate on a motion to suppress, before adopting the magistrate's recommendation." United States v. Elsoffer, 644 F.2d 357, 358 (5th Cir. 1981) (*per curiam*).[1] Pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Criminal Procedure 59(b)(2), Defendant timely filed his objections. Doc. No. [70]. The

---

[1] See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981).

AO 72A
(Rev.8/82)

Government has not filed a response to the objections. The Court has read the transcript of the hearing in this case and will address each of the Defendant's objections in turn.

Defendant's only substantive objection to the Magistrate Judge's findings of fact is to her finding "that the three Atlanta Police officers [who testified at the suppression hearing] were credible despite a number of discrepancies and inconsistencies in their respective testimony." Doc. No. [35], p. 2. Nowhere in his objections to the R&R does Defendant explain what alleged "discrepancies and inconsistencies" in the officers' testimony undermined their credibility. Based on a review of the R&R, it appears that the essence of the alleged "inconsistencies" in the officers' testimony are that they did not all "observe various events at the same time" and that, although all three officers testified to smelling raw marijuana, no marijuana was recovered. See Doc. No. [30], p. 11. However, this Court does not find that the the officers' testimony at the suppression hearing was so "*exceedingly* improbable," "unbelievable," or "contrary to the laws of nature," such that "no reasonable factfinder could accept it." See United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002) (emphasis in original).

The fact that not all of the officers observed every furtive movement by Defendant does not make their testimony "unbelievable." Defendant was pulled over

at night, in an area that was so poorly lit that the officers needed to use their flashlights to conduct the traffic stop. See Doc. No. [23], pp. 10–11, 49–50, 86, 94. Moreover, the officers approached Defendant's car from different angles, making it unsurprising that they had slightly different vantage points of what was happening inside the car. See id. pp. 11–12, 27–28, 50–51, 86.

Likewise, the fact that the three officers smelled raw marijuana at different points during the arrest is not "exceedingly improbable" because the officers were standing in different places surrounding the vehicle during the stop. See id. pp. 12, 31, 75–76, 87–88. Nor is it "contrary to the laws of nature" for a vehicle to smell of raw marijuana even though no marijuana was found inside the vehicle at the time of the arrest. See Doc. No. [30], pp. 24–25; see also United States v. Dean, 2015 WL 3952715, at *5 (W.D. Tenn. June 29, 2015) (noting that, although it was "improbable" that the officer smelled "the odor of one gram of raw marijuana hidden inside the closed center console, the smell could have come from marijuana that had been recently stored in the [vehicle]"). Thus, Defendant's objection to the Magistrate Judge's credibility findings is overruled.[2]

---

[2] Because the Court accepts the Magistrate Judge's credibility determinations, the Court need not hold a rehearing with regard to the disputed testimony. See United States v. Dorvilus, 357 F. App'x 239, 244 (11th Cir. 2009) (holding that a district judge "is not required to rehear witness testimony when accepting a magistrate judge's credibility findings").

AO 72A
(Rev.8/82)

Defendant next objects that "it is unclear why" the Magistrate Judge concluded that his arrest was lawful. Doc. No. [35], p. 2. Yet Defendant himself abundantly explains the Magistrate Judge's reasoning for concluding that the officers had probable cause for his arrest — the decision was based on Defendant's "furtive actions coupled with the alleged odor of raw marijuana." Id.; see also Doc. No. [30], p. 26. Nowhere in his objections to the R&R does Defendant dispute the Magistrate Judge's finding that he refused to comply with the officers' repeated instructions to fully roll down the driver's side window. See Doc. No. [35]; see also Doc. No. [23], pp. 12–14, 51–52, 87. Nor does Defendant dispute the finding that both Officer Daryl Moore and Officer Caleb Munson observed Defendant appearing to reach for something under his seat — where the .40 caliber pistol was located. See Doc. No. [35]; see also Doc. No. [23], pp. 12–14, 29–30, 51–53, 86–87, 93–94. While Defendant argues that the officers' testimony that they smelled marijuana is "questionable" in light of the fact that "no marijuana was recovered," the Court has already decided that the officers' testimony on that point is credible. See Doc. No. [35], p. 3.

While furtive actions alone are insufficient to establish probable cause, they are relevant to determining whether, under a totality of the circumstances, "a prudent person [would believe that the suspect has committed or is committing an offense." See Craig v. Singletary, 127 F.3d 1030, 1042 (11th Cir. 1997). As the

AO 72A
(Rev.8/82)

Magistrate Judge noted, the furtive actions in conjunction with the odor of raw marijuana that all three officers smelled was sufficient to establish probable cause. See Doc. No. [30], p. 26; see also United States v. Tobin, 923 F.2d 1506, 1512 (11th Cir.1991) (*en banc*); United States v. Lueck, 678 F.2d 895, 903 (11th Cir.1982). The Court also notes that the decision to remove Defendant from the vehicle may well have been justified on a lesser showing than probable cause, in light of his refusal to comply with the officers and reaching toward the floorboard of the car. See United States v. White, 593 F.3d 1199, 1202 (11th Cir.2010) (holding that an officer may conduct a pat-down search in connection with a traffic stop if he has reason to believe that his own safety or the safety of others is at risk).

Defendant objects to the Magistrate Judge's conclusion that the warrantless search of his vehicle was justified. Doc. No. [35], pp. 3–4. He objects both to the finding that the officers smelled raw marijuana, and to the conclusion that his pre-Miranda custodial statements were voluntary. Id. Notably, Defendant does not dispute the Magistrate Judge's conclusion that the automobile exception applies in this case, but rather simply objects to the Magistrate Judge's conclusion that probable cause existed. See Doc. No. [30], pp. 26–27; Doc. No. [35], pp. 3–4. As discussed above, the officers' testimony that they smelled marijuana was credible. Nothing in the record contradicted their testimony. See Doc. No. [30] pp. 25–26. Defendant

AO 72A
(Rev.8/82)

posits that the Magistrate Judge's suggestion that the marijuana may have been in a part of the car the officers did not search, but does not dispute the Magistrate Judge's other explanation for why the car may have smelled of marijuana although none was recovered—namely, that marijuana may have been removed from the car shortly before the arrest. See Doc. No. [35], p. 3; see also Doc. No. [30], p. 25.

As to Defendant's argument that his pre-Miranda statements were involuntary, this argument was considered and rejected by the Magistrate Judge. Defendant refused repeated instructions to fully roll down the window and the officers observed Defendant making furtive movements. Doc. No. [23], pp. 12–14, 51–53, 62–63, 73–76, 83, 87, 96–98. Eventually, Defendant was removed from his vehicle by Officer Munson, who opened the driver's side door and pulled Defendant out by his arm after seeing Defendant reach toward the floorboard. Id. pp. 12–14, 51–53, 87. Defendant was placed in handcuffs, and escorted back to the police cruiser. Id. pp. 14–15, 55, 74, 92, 99. In a normal tone of voice, Officer Moore simply asked Defendant if there was anything illegal inside the vehicle. Id. pp. 56–57, 88. Defendant responded that there was a firearm in the vehicle—the firearm that is the subject of the instant offense—and that there "may be something inside of a Gucci bag"—which contained various narcotics. See id. pp. 87–88. Defendant contends that his statements were not voluntary because the above conduct was so coercive that

6

"a reasonable person under these circumstances would [not] have felt that he was free to refuse to answer the officers' questioning." Doc. No. [35], pp. 3–4.

In order to show that his statements were involuntary, Defendant must demonstrate "a substantial element of coercive police conduct." See Colorado v. Connelly, 479 U.S. 157, 164, 107 S. Ct. 515, 520, 93 L. Ed. 2d 473 (1986). In determining if police conduct is coercive, the Court considers a variety of factors, including "the defendant's intelligence, the length of his detention, the nature of the interrogation, the use of any physical force against him, or the use of any promises or inducements by police." Hubbard v. Haley, 317 F.3d 1245, 1253 (11th Cir. 2003). "Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession." United States v. Thompson, 422 F.3d 1285, 1295-96 (11th Cir. 2005).

Here, the conduct of the officers can hardly be described as the kind of coercive police conduct that would make Defendant's statements involuntary. The officers had Defendant step out of the vehicle after he repeatedly refused to roll his window down fully and reached under his seat. They had every right to ask Defendant to step out of the vehicle as part of an ordinary traffic stop. See United States v. Spoerke, 568 F.3d 1236, 1248 (11th Cir. 2009). Officer Munson's decision to

take Defendant by the arm and place him in handcuffs was permissible as a step "reasonably necessary to protect [his] personal safety" in light of the fact that Defendant refused to comply with the officers' commands and was seen reaching under his seat. See id. Defendant was detained for, at most, a matter of minutes before making the statements, which is not the kind of "exhaustingly long interrogation" that would constitute coercive police conduct. See Thompson, 422 F.3d at 1295-96. The officers did not draw their weapons, make threats or promises, and questioned Defendant in a normal tone of voice. See Doc. No. [23], 18, 56–57, 91–93. Being led by the arm back to the police cruiser is most certainly not an undue "application of physical force" meant to induce a confession. See Thompson, 422 F.3d at 1295-96. Simply put, the Magistrate Judge correctly concluded that Defendant's pre-Miranda statements were voluntary and supported a finding of probable cause to search the vehicle. See Doc. No. [30], pp. 28–33.

Finally, Defendant objects to the Magistrate Judge's conclusion that his post-Miranda statements are admissible. He first argues that the Magistrate Judge incorrectly held that he abandoned his argument that " his statements should be suppressed as a result of the initial unwarned custodial statements." Doc. No. [35], pp. 1–2. While the Magistrate Judge noted that Defendant "apparently abandon[ed]" this argument in his reply brief, the Magistrate Judge nevertheless addressed the

argument on the merits. See Doc. No. [30], pp. 2–3, 33–34. Specifically, the Magistrate Judge noted that Defendant's argument is foreclosed by Oregon v. Elstad, 470 U.S. 298, 105 S. Ct. 1285, 84 L. Ed. 2d 222 (1985), which held that post-Miranda statements need not be suppressed due to pre-Miranda statements that were "knowingly and voluntarily made." Doc. No. [30], pp. 33–34; see also Elstad, 470 U.S. at 309. This Court has already determined that Defendant's pre-Miranda statements were knowing and voluntary, and he makes no argument that the officers used a "deliberate 'question first' strategy" to induce the statements. See United States v. Street, 472 F.3d 1298, 1312 (11th Cir. 2006). Defendant's other argument for suppressing his post-Miranda statements also fails because the Court has already determined that his arrest was lawful, and that the search of his vehicle was proper. See Doc. No. [35], p. 4.

## CONCLUSION

The R&R (Doc. No. [30]) is hereby **ADOPTED** as the order of the court, and Defendant's objections to the R&R (Doc. No. [35]) are **OVERRULED**. The Defendant's Motion to Suppress (Doc. Nos. [15], [16]) are **DENIED**.

**IT IS SO ORDERED**, this 9th day of May, 2016.

_____
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)